NO. 25-2162

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

ROGER LOPEZ,

*Plaintiff-Appellan*t,

v.

CITY OF SAN DIEGO,

*Defendant-Appellee.*

On Appeal from the United States District Court
For the Southern District of California
No. 3:24-cv-01577-LL-DDL
Hon. Linda Lopez

---

**APPELLEE'S ANSWERING BRIEF**

---

HEATHER FERBERT, City Attorney
M. TRAVIS PHELPS, Assistant City Attorney
MATTHEW L. ZOLLMAN, Deputy City Attorney
California State Bar No. 288966
JENNY GOODMAN, Deputy City Attorney
California State Bar No. 177828
 Office of the City Attorney
 1200 Third Avenue, Suite 1100
 San Diego, California 92101-4178
 Telephone: (619) 533-5857

Attorneys for Appellee City of San Diego

1

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................ 4-6

INTRODUCTION ............................................................................. 7

ISSUES PRESENTED ...................................................................... 8

STATEMENT OF THE CASE ............................................................ 8

SUMMARY OF THE ARGUMENT .................................................. 10

ARGUMENT ................................................................................... 11

    I.    The Ordinance Is Neither Vague Nor Overbroad ............... 12

        A.    The Ordinance Provides Clear, Objective Standards and Fair Notice ............................................................. 13

            1.    Harassment Is Well Defined and Narrow in Scope ............................................................. 14

            2.    Noise Limitations Include Both a Bright-Line Rule and Objective Test ................................. 16

        B.    The Ordinance's Lawful Sweep Defeats the Overbreadth Claim. .................................................... 19

    II.    The Ordinance Is Narrowly Tailored to Significant Government Interests ........................................................ 20

        A.    Hill Controls; Application to All Covered Facilities Is Constitutional ............................................................. 23

        B.    Harassment and Noise Limits Do Not Create a Cumulative Burden ..................................................... 25

C.      Claimed Dissimilarities from Hill Are Constitutionally Insignificant ...............................................................26

III.    The Ordinance Is Content Neutral ....................................33

       A.      Employee Scope-of-Duties Exemption Is Not Speaker-Based Discrimination.................................35

       B.      Alleged Legislative Motive Does Not Affect Content Neutrality ................................................36

       C.      Noise Limitations Are Content Neutral ...................37

IV.    *Hill v. Colorado* Remains Binding.......................................39

       A.      *Hill* Controls This Case............................................39

       B.      The Buffer Zone is Facially Content Neutral ...........41

       C.      The Ordinance Serves Compelling Interests ............43

       D.      The Ordinance is Narrowly Tailored .......................44

V.     Preliminary Injunction Is Unwarranted...............................46

CONCLUSION ....................................................................................47

STATEMENT OF RELATED CASES ..................................................48

CERTIFICATE OF COMPLIANCE......................................................49

CERTIFICATE OF SERVICE   .........................................................50

# TABLE OF AUTHORITIES

**Page**

## Cases

*Agostini v. Felton,*
521 U.S. 203 (1997) ................................................................39

*American Communications Assn. v. Douds,*
339 U.S. 382 (1950) ................................................................19

*Blythe v. City of San Diego,*
No. 3:24-cv-2211, 2025 WL 1570528 (S.D. Cal. 2025), ...................25

*Brown v. City of Pittsburgh,*
586 F.3d 263 (3d Cir. 2009) ........................................ 16, 22, 25

*Cal. Teachers Ass'n v. State Bd. of Educ.,*
271 F.3d 1141 (9th Cir. 2001) ................................................13

*City Council of Los Angeles v. Taxpayers for Vincent,*
466 U.S. 789 (1984) ................................................................17

*City of Renton v. Playtime Theatres, Inc.,*
475 U.S. 41 (1986) ................................................................22

*Coal. Life v. City of Carbondale,*
No. 23-2367, 2024 WL 1008591, at *1 (7th Cir. Mar. 8, 2024), cert. denied,
145 S. Ct. 537 (2025) ..............................................................40

*Coates v. City of Cincinnati,*
402 U.S. 611 (1971) ................................................................18

*G.K. Ltd. Travel v. City of Lake Oswego,*
436 F.3d 1064 (9th Cir. 2006) ................................................22

*Grayned v. City of Rockford,*
408 U.S.104 (1972) ........................................ 18, 19, 38, 39

*Heffron v. Int'l Soc'y for Krishna Consciousness, Inc,.*
452 U.S. 640 (1981) ................................................................34

*Hill v. Colorado,*
530 U.S. 729 (2000) .......................................................... passim

*Hoye v. City of Oakland,*
653 F.3d 835, 849 n.11 (9th Cir. 201) ................. 15, 16, 22, 24, 29, 35

*Lorillard Tobacco Co. v. Reilly,*
533 U.S. 525 (2001) ................................................................22

*Madsen v. Women's Health Center, Inc.*,
   512 U.S. 753 (1994) ............................................................................ 29, 38, 39

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ................................... 12, 20, 23, 29, 35, 36, 39, 40, 43, 44

*Moody v. NetChoice, LLC*,
   603 U.S. 707 (2024) ......................................................................... 13, 19

*NLRB v. Baptist Hospital, Inc.*,
   442 U.S. 773 (1979) ....................................................................................39

*O'Brien v. Welty*,
   818 F.3d 920 (9th Cir. 2016) ......................................................................15

*Price v. City of Chicago*,
   915 F.3d 1107 (7th Cir. 2019) ................................................ 22, 24, 29, 39. 40

*Project Veritas v. Schmidt*,
   125 F.4th 929 (9th Cir. 2025) ............................................................ 20, 34, 42

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) ................................................................. 12, 39, 40, 41

*Schenck v. Pro-Choice Network of W. N.Y.*,
   519 U.S. 357 (1997) ....................................................................................29

*Sisters for Life, Inc. v. Louisville-Jefferson Count,y*
   56 F.4th 400 (6th Cir. 2022) ......................................................................23

*State Oil Co. v. Khan*,
   522 U.S. 3, 20 (1997) .................................................................................39

*Turner Broad. Sys., Inc. v. FCC*,
   512 U.S. 622 (1994) ....................................................................................34

*United States v. Hansen*,
   599 U.S. 762 (2023) ....................................................................................19

*United States v. O'Brien*,
   391 U.S. 367 (1968) ....................................................................................36

*United States v. Osinger*,
   753 F.3d 939 (9th Cir. 2014) ......................................................................15

*United States v. Williams*,
   553 U.S. 285 (2008) ....................................................................................13

*Vitagliano v. Cnty. of Westchester*,
   71 F.4th 130, 140 (2d Cir.), cert. denied, 144 S. Ct. 486 (2023) ........................40

5

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ...................................................... 13, 17. 20, 26, 33, 37, 44

**Other Authorities**

California Penal Code
  Section 646.9(e) ........................................................................... 14

San Diego Municipal Code
  Section 52.1001 ...................................................... 9, 43
  Section 52.1002 ...................................................... 9, 14
  Section 52.1003 ...................................................... 9, 20, 21
  Section 52.1003(a)(3) ..................................................................... 17
  Section 52.1003(f) ..................................................................... 35
  Section 52.1004 ...................................................... 20, 22
  Section 52.1004(a)(1) ..................................................................... 17
  Section 52.1004(a)(2) ..................................................................... 17
  Section 52.1004(b) ...................................................... 17, 26

## INTRODUCTION

For nearly a quarter century, *Hill v. Colorado*, 530 U.S. 703 (2000), has supplied clear guidance: reasonable time, place, and manner regulations near health care entrances are fully consistent with the First Amendment. Relying on *Hill*, the district court dismissed Appellant's facial challenge to San Diego's Ordinance O-21822, which regulates conduct within 100 feet of healthcare facilities, school grounds, and places of worship in San Diego in order to promote free access and privacy.

The Ordinance is modest and content neutral. It does not prohibit speech or expressive activity; it imposes only two narrow, objective limits that are the subject of this litigation: an eight-foot buffer for unconsented approaches within 100 feet of a covered entrance door or gate, and modest noise limitations. These provisions target harassment and obstruction, not ideas, and leave open ample opportunities for communication, including sign displays, literature distribution with consent, and normal conversation beyond eight feet.

Appellant's claims of vagueness, overbreadth, and content discrimination ignore the ordinance's text and the uniform precedent upholding similar measures. Nearly identical laws have stood across the country for decades, and no intervening

7

authority has overruled *Hill*. The district court correctly applied that binding precedent. This Court should do the same and affirm.

## ISSUES PRESENTED

1.      Whether San Diego Ordinance O-21822 is a content-neutral, narrowly tailored time, place, and manner regulation that leaves open ample alternative channels of communication.

2.      Whether the Ordinance's harassment and noise provisions, judged in relation to its legitimate sweep, provide clear and objective standards and are neither unconstitutionally vague nor overbroad.

3.      Whether *Hill v. Colorado*, 530 U.S. 703 (2000), remains binding precedent controlling the validity of San Diego's Ordinance.

4.      Whether the Ordinance's exemption for employees, agents, and volunteers acting within the scope of their duties is content-neutral.

5.      Whether the district court correctly dismissed the complaint with prejudice and denied Plaintiff's motion for preliminary injunction as moot.

## STATEMENT OF THE CASE

This case concerns San Diego Ordinance O-21822 ("the Ordinance"), adopted on June 11, 2024, to regulate certain conduct within 100 feet of health care facilities, places of worship, and school grounds (collectively, "Covered

8

Facilities"). 3-ER-370-81. The stated purpose of the Ordinance is to prevent obstruction, harassment, and intimidation of people entering and exiting Covered Facilities while preserving the constitutional rights of individuals to assemble and express opinions on matters of public concern. 3-ER-372.

The Ordinance amends San Diego Municipal Code sections 52.1001 and 52.1002 and adds four new sections, 52.1003 through 52.1006. 3-ER-372-80. It prohibits obstructing entrances, exits, or parking lot access at a Covered Facility. 3-ER-375. To address harassment and intimidation, it establishes a 100-foot buffer zone around the main entrance door or gate of each Covered Facility. *Id*. Within that zone, no person may approach within eight feet of another person in the public right-of-way or sidewalk who is seeking to enter or exit a Covered Facility for purposes of harassment or intimidation. *Id.* Within the buffer zone, a person may not approach within eight feet, without consent, to pass a leaflet or handbill, display a sign, or engage in oral protest, education, or counseling without consent. *Id.* The Ordinance contains an exemption for employees, agents, or volunteers of Covered Facilities acting within the scope of their employment, agency, or volunteer service. 3-ER-376.

The Ordinance also includes noise restrictions within the same 100-foot radius. It prohibits disturbing, excessive, or offensive noise that would cause

9

discomfort or annoyance to a reasonable person of normal sensitivities or interfere with the operation of a Covered Facility. 3-ER-377. It further limits the use of loudspeakers or similar devices to 55 decibels or less at a distance of ten feet or more from the source. *Id.*

Appellant Roger Lopez is a self-described "sidewalk counselor" who states that his goal is to speak with women approaching the downtown Planned Parenthood facility. 3-ER-347. He alleges he spends 20 to 25 hours per month outside that facility offering conversation, emotional support, and pamphlets on pregnancy and childcare resources. *Id.* He claims that the Ordinance has caused him and others to self-censor to avoid potential penalties, including fines and incarceration. 3-ER-357–58.

On September 5, 2024, Appellant filed a complaint asserting a facial First Amendment challenge to the Ordinance. 3-ER-343–68. The City moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that *Hill v. Colorado* and related precedent foreclosed Appellant's claims. 2-ER-154–73. After full briefing, the district court granted the motion on March 21, 2025, dismissed the complaint with prejudice, and entered judgment for the City. 1-ER-2–22. This appeal followed.

10

## SUMMARY OF THE ARGUMENT

San Diego's ordinance is constitutional under binding precedent. For nearly twenty-five years, *Hill* has upheld nearly identical laws as valid time, place, and manner regulations that balance public access with free expression. The ordinance here follows the same model: it imposes a narrow, consent-based eight-foot buffer within 100 feet of certain entrances and modest noise limitations. It does not ban speech, restrict viewpoints, or eliminate opportunities for public advocacy.

First, the ordinance is not unconstitutionally vague or overbroad. It employs widely accepted legal standards and relies on objective criteria, including the reaction of a reasonable person, coupled with clear examples of prohibited conduct. Its core target—obstruction, intimidation, and disruptive noise—is well within the City's authority to regulate. Any incidental impact on protected speech is minor when compared to its legitimate sweep, leaving ample alternatives such as sign displays, consented conversations, and literature distribution beyond eight feet.

Second, the ordinance is narrowly tailored to advance significant government interests. Protecting safe ingress to health care facilities, schools, and places of worship is a compelling and longstanding concern. The eight-foot

distance is minimal, and the noise limitations are modest and geographically confined. Together they ensure access without silencing anyone's voice.

Third, the ordinance is content neutral. It applies equally regardless of message, and its purpose, facilitating access and preventing harassment, is unrelated to viewpoint. Under *McCullen,* the limited exemption for employees engaged in the scope of their employment does not alter neutrality.

Finally, *Hill* remains controlling law. No Supreme Court decision has overruled it, and several circuit opinions post *Reed v. Town of Gilbert* have reaffirmed it as binding precedent. The district court properly applied that binding precedent and dismissed Appellant's facial challenge. This Court should do the same and affirm.

## ARGUMENT

## I.     The Ordinance Is Neither Vague Nor Overbroad

A statute is impermissibly vague only if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732 (internal quotations omitted). Although greater clarity is required for laws touching speech, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."

12

*Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989); *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001).

A law is facially overbroad only when it prohibits a substantial amount of protected speech "judged in relation to the statute's plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008); see also *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Williams*, 553 U.S. at 293 (internal quotations omitted).

### A. The Ordinance Provides Clear, Objective Standards and Fair Notice

Appellant's vagueness challenge fails for the same reason the Supreme Court rejected nearly identical arguments in *Hill*. The Ordinance uses common words, objective standards, and a scienter requirement, giving ordinary people fair notice and enforcement authorities clear guidance. *Hill* explained that it is unlikely that anyone would not understand the common words used in the statute and that hypothetical situations will not support a facial attack on a statute that is surely valid in the vast majority of its intended applications. *Hill,* 530 U.S. at 733. The district court correctly found that the Ordinance uses widely accepted legal standards and is not ambiguous. 1-ER-20–21.

13

## 1. Harassment Is Well Defined and Narrow in Scope

Appellant argues that terms such as "harassment," "seriously alarm," and "cause substantial distress" lack clarity (AOB 21), but these terms have long been upheld as constitutionally sound when tied to an objective standard and a scienter requirement, as this Ordinance does. The Ordinance defines "harassment" as "engaging in a knowing and willful actions or course of conduct directed at a specific person or persons that would seriously alarm or aggravate, cause substantial distress to, intimidate, terrorize, threaten, or torment a reasonable person." SDMC § 52.1002. It also lists concrete examples—such as repeated unconsented approaches, intentional physical contact, and violent gestures, providing clarity and limiting enforcement discretion. *Id.*

The Ordinance aligns with widely accepted statutory language. For example, California Penal Code section 646.9(e) defines "harass" in the stalking context as "engaging in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." The Ordinance's definition of harassment is narrower because it applies only in a limited geographic zone and excludes conduct that merely "annoys," focusing instead on serious harm.

14

The Ninth Circuit has approved similar language. In *United States v. Osinger*, 753 F.3d 939, 943–45 (9th Cir. 2014), the court rejected a vagueness challenge to a federal statute criminalizing conduct intended to "harass" or "cause substantial emotional distress". The court cited Black's Law Dictionary's definition of harassment: "words, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress in that person and serves no legitimate purpose…." *Id.* at 945. The Ordinance provides greater specificity than the federal statute in *Osinger* by defining harassment in detail and illustrating prohibited conduct.

The Ninth Circuit reaffirmed this reasoning in *O'Brien v. Welty*, which upheld a campus policy prohibiting harassment and intimidation. The court noted that "harass" "[is] not [an] esoteric or complicated term [ ] devoid of common understanding." 818 F.3d 920, 930 (9th Cir. 2016) (quoting *Osinger,* 753 F.3d at 945). The Ordinance here goes further: it includes an explicit *mens rea* requirement and operates only in a defined buffer zone.

Similar approach-based provisions have also survived vagueness review. In *Hoye v. City of Oakland*, 653 F.3d 835, 849 n.11 (9th Cir. 2011), the court affirmed the facial constitutionality of an ordinance prohibiting approaching within eight feet without consent, rejecting vagueness challenges to terms such as

15

"approach" and "consent." Likewise, in *Brown v. City of Pittsburgh*, the Third Circuit rejected a vagueness challenge to the term "consent" in a buffer zone statute. 586 F.3d 263, 291 n.34 (3d Cir. 2009). Relying on *Hill,* the Court rejected Petitioner's "hypothetical questions" as a foundation for a vagueness challenge. *Id.* Moreover, the Court noted, "any vagueness concern 'is ameliorated by the fact that' the Ordinance 'contains a scienter requirement.'" *Id.* (quoting *Hill*, 530 U.S. at 732.) The Ordinance's similar consent-based approach requirement, combined with its scienter element, provides equal or greater clarity than the ordinances upheld in *Hoye* and *Brown*.

Later sections of Appellant's brief show that his vagueness challenge is largely academic. He points to generally applicable laws that use terms such as "boisterous," "tumultuous," "interferes," and "disorderly conduct." These terms are no more precise than those in the Ordinance. The ability to raise hypothetical questions does not create a constitutional deficiency and has been described by one court as "pettifoggery." See *Hoye*, 653 F.3d at 849 n. 11.

### 2. Noise Limitations Include Both a Bright-Line Rule and Objective Test

Appellant's challenge to the Ordinance's noise restrictions ignores settled precedent: the Supreme Court has repeatedly upheld similar, and even less precise standards, especially when combined with geographic limits and objective tests.

16

The Ordinance limits noise only within a 100-foot radius of a covered entrance and applies an objective reasonable-person test. SDMC § 52.1004(a)(1), (2). It prohibits noise that is "disturbing, excessive, or offensive" and that would cause discomfort to a "reasonable person of normal sensitivities" or "unreasonably interfere" with a facility's operations. *Id*. The law also imposes a bright-line rule: amplified sound may not exceed 55 decibels, measured ten feet from the source, from one hour before until one hour after the posted operating hours. SDMC §§ 52.1003(a)(3); 52.1004(b). The Ordinance's noise limitations are not vague and provide far more clarity than other statutes courts have upheld.

The Supreme Court has long recognized the government's substantial interest in controlling excessive noise in public forums. In *Ward v. Rock Against Racism*, the Court sustained New York City's guideline requiring the use of city sound equipment and technicians to maintain amplification levels appropriate for the event and location. 491 U.S. at 784–85. The Court affirmed that government "ha[s] a substantial interest in protecting its citizens from unwelcome noise," even in such traditional public forums as city streets and parks. *Id*. at 796 (quoting *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806 (1984)). If the subjective concept of maintaining appropriate sound amplification level satisfied

due process in *Ward*, then San Diego's approach, which pairs an objective reasonableness test with a numeric decibel cap, provides far greater clarity.

*Grayned v. City of Rockford* reinforces this conclusion. The Court upheld a ban on "any noise or diversion which disturbs or tends to disturb the peace or good order of such school session," explaining that the ordinance's language, though not mathematically precise, was "marked by flexibility and reasonable breadth" and sufficiently definite in context. 408 U.S. 104, 108–14 (1972). The Ordinance is narrower than the statute in *Grayned*, confined to a 100-foot buffer, and strengthened by a specific 55-decibel limit, far exceeding what the Court deemed acceptable in *Grayned*. Moreover, the goal of facilitating patient access and privacy is directly furthered by imposing noise limitations. See *Hill*, 530 U.S. at 716.

Appellant's reliance on *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), is misplaced. *Coates* struck down a citywide ban on conduct deemed "annoying" because it lacked any objective measure or contextual limitation. *Id*. at 614. In contrast, San Diego's Ordinance applies only within a limited zone, uses an objective reasonable-person standard, and includes a bright-line decibel cap for amplified sound. 3-ER-377.

"It will always be true that the fertile legal 'imagination can conjure up hypothetical cases in which the meaning of (disputed) terms will be in nice question.'" *Grayned,* 408 U.S. at 110 n.15 (quoting *American Communications Assn. v. Douds*, 339 U.S. 382, 412 (1950)). However, *Hill* makes clear that "we can never expect mathematical certainty from our language," and borderline cases do not justify facial invalidation of a statute "that is surely valid in the vast majority of its intended applications." 530 U.S. at 733. The Ordinance easily satisfies this standard, offering clearer guidance than other regulations the Supreme Court has upheld in this area.

### B. The Ordinance's Lawful Sweep Defeats the Overbreadth Claim

Appellant's overbreadth challenge to the harassment and noise provisions fails under the controlling standard. (AOB 26.) Invalidation for overbreadth "is strong medicine that is not to be casually employed." *United States v. Hansen*, 599 U.S. 762, 770 (2023) (quotation marks omitted). A facial challenge succeeds in the First Amendment context only if "a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (quotation marks omitted).

Here, the Ordinance has a plainly legitimate sweep. Like the statute upheld in *Hill*, it regulates where certain conduct may occur, not what may be said. 530

19

U.S. at 730. It targets obstruction and harassment, as well as disturbing, excessive, or offensive noise near facilities where the City has compelling safety and privacy interests and applies only within a 100-foot radius of Covered Facilities. Within that zone, it restricts unconsented approaches within eight feet and disturbing, excessive, or offensive noise. SDMC §§ 52.1003, 52.1004.

Appellant offers no meaningful analysis of the Ordinance's lawful applications or any attempt to weigh them against hypothetical unconstitutional ones. See *Project Veritas v. Schmidt*, 125 F.4th 929, 961 (9th Cir. 2025) (rejecting overbreadth claim where plaintiff "ma[de] little effort to identify and weigh the [law's] lawful and unlawful applications"). Nor has he shown that the Ordinance reaches a substantial amount of protected speech in relation to its legitimate sweep.

## II. The Ordinance Is Narrowly Tailored to Significant Government Interests

The Ordinance is a valid content-neutral time, place, and manner regulation. It serves a significant governmental interest, is narrowly tailored, and leaves open ample alternative channels for communication. *McCullen v. Coakley*, 573 U.S. 464, 477 (2014) (quoting *Ward*, 491 U.S. at 791).

The City's interest in adopting the Ordinance is substantial. The Council found that aggressive demonstration activities around health care facilities, schools, and places of worship had subjected students, teachers, parents,

20

worshippers, providers, and patients to harassment, abuse, and obstruction.
3-ER-371. The Council also noted specific complaints involving Planned
Parenthood of the Pacific Southwest and identified safety risks from demonstrators
blocking entrances and driveways. *Id.* The goal of the Ordinance was to "prevent
the obstruction, harassment, and intimidation of people entering and exiting
Covered Facilities while preserving the fundamental constitutional rights of people
to peacefully assemble and express opinions on matters of public concern."
3-ER-372. Such concerns fall within the City's traditional authority to protect
health, safety, and access. The Supreme Court has recognized that ensuring
unimpeded access to health care facilities and avoiding potential trauma to patients
are compelling concerns. *Hill*, 530 U.S. at 715.

The Ordinance is narrowly tailored to address those interests without
burdening more speech than necessary. It establishes an eight-foot buffer within
100 feet of Covered Facilities, applying only to intentional, unconsented
approaches for specified activities such as oral protest, education, counseling, and
leafletting. SDMC § 52.1003. As *Hill* explained in upholding an almost identical
law, the buffer is "an exceedingly modest restriction" that preserves normal
conversational distance, allows signs to be read, and permits willing recipients to
accept literature. 530 U.S. at 726–27, 730. The Ordinance also includes targeted

21

noise limits, prohibiting only disturbing, excessive, or offensive noise, and amplified sound that exceeds 55 decibels. SDMC § 52.1004. These measures leave core expressive activity untouched and apply "where the restriction is most needed." *Hill*, 530 U.S. at 730.

The City was not required to wait for an incident at every Covered Facility before acting. Legislatures may rely on history, consensus, and common sense when crafting public safety measures. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001); *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50–52 (1986); *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1073 (9th Cir. 2006). San Diego's approach mirrors regulations upheld in Colorado (*Hill*), Oakland (*Hoye v. City of Oakland*, 653 F.3d 835), Chicago (*Price v. City of Chicago*, 915 F.3d 1107 (7th Cir. 2019)), and Pittsburgh (*Brown v. City of Pittsburgh*, 586 F.3d 263), each upheld against similar challenges.

Finally, the Ordinance leaves open ample alternative channels for communication. Demonstrators may stand near entrances, display signs, speak at conversational volume, and distribute literature with consent or from a stationary position. These options permit effective advocacy while protecting the rights of individuals to avoid unwanted close contact. As the Supreme Court recognized in *Hill*, such restrictions maintain "ample room to communicate a message" and

22

preserve the balance between expressive freedom and personal privacy. 530 U.S. at 730.

### A. Hill Controls; Application to All Covered Facilities Is Constitutional

Appellant argues the Ordinance is not narrowly tailored because it applies to "any health care facility, school grounds, or place of worship." (AOB 28.) That contention is unavailing for two reasons, particularly in light of *Hill's* narrow tailoring analysis.

First, the cases Appellant cites—*McCullen v. Coakley*, 573 U.S. 464 (2014), and *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400 (6th Cir. 2022)—do not support his position. *McCullen* struck down a 35-foot fixed buffer zone that categorically excluded all speakers from public sidewalks, creating "speech-free zones." 573 U.S. at 488, 492. *Sisters* likewise invalidated a law that barred any person from entering or remaining within ten feet of a health care entrance. 56 F.4th at 402. Both involved blanket prohibitions on presence in a public forum, which require distinct tailoring inquiries. The Ordinance here does no such thing. It leaves all sidewalks open to stationary speakers, consensual conversations, and leafletting, and regulates only unconsented close approaches within eight feet—precisely the structure upheld in *Hill*, 530 U.S. at 703.

23

Second, *Hill* forecloses the claim that a law is not narrowly tailored because it applies broadly. Upholding a virtually identical statute, *Hill* held that "[t]he fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance." *Id*. at 730-31. The Ninth Circuit has recognized that because ordinances like this are modeled on the Colorado statute in *Hill*, "that opinion controls much of our analysis." *Hoye*, 653 F.3d at 843; see also *Price*, 915 F.3d at 1119 (*Hill*'s narrow-tailoring analysis was "highly generalized" and not fact-dependent.). The inclusion of schools and places of worship does not alter the tailoring analysis here, particularly because Appellant challenges only the Ordinance's application to health care facilities and alleges no facts about other locations. The City has substantial interests in protecting access, privacy, and safety at all Covered Facilities, and advances those interests through the same modest, consent-based approach upheld in *Hill*.

Finally, *Blythe v. City of San Diego*, No. 3:24-cv-2211, 2025 WL 1570528 (S.D. Cal. 2025), is inapposite. There, the court allowed an as-applied challenge to proceed only as to the Ordinance's application to schools. Here, Appellant challenges the Ordinance solely as applied to health care facilities. The tailoring analysis for that application is squarely governed by *Hill*.

24

### B. Harassment and Noise Limits Do Not Create a Cumulative Burden

Appellant argues that combining the harassment and noise limitations with the eight-foot buffer creates cumulative burdens that undermine narrow tailoring. (AOB 31–33.) That contention misreads both the Ordinance and the precedent on which he relies.

The Third Circuit's decision in *Brown v. City of Pittsburgh* involved two buffer zones, a fixed 15-foot zone and a *Hill*-style eight-foot floating zone, applied to the same entrances. 586 F.3d at 266. The court evaluated their combined effect because the overlapping zones foreclosed significant expressive activity near clinic doors. 586 F.3d 263 at 276. The Ordinance here creates no such overlap. It has a single eight-foot buffer, limited to within 100 feet of a Covered Facility, leaving sidewalks open to stationary speech, consensual conversations, and leafletting. As in *Hill v. Colorado*, "demonstrators with leaflets might easily stand on the sidewalk at entrances ... and, without physically approaching those who are entering the clinic, peacefully hand them leaflets as they pass by." 530 U.S. 703 at 729–30 (quoted in *Brown*, 586 F.3d at 282).

The harassment provision does not add a new speech burden; it codifies the very concern recognized in *Hill*. There, the Court upheld a statute aimed at preventing "harassment, the nuisance, the persistent importuning, the following,

25

the dogging, and the implied threat of physical touching" that can accompany unwelcome approaches within eight feet. 530 U.S. at 724. The Ordinance's definition of harassment simply makes explicit what *Hill* accepted as a legitimate target of regulation.

The noise provision is similarly modest. It prohibits only "disturbing, excessive, or offensive noise" and amplified sound exceeding 55 decibels at ten feet. SDMC § 52.1004(b). These are reasonable, content-neutral time, place, and manner limits long upheld as constitutional. *Ward*, 491 U.S. at 796. Neither *Hill* nor *Brown* suggests that adding a reasonable noise regulation to a valid buffer zone changes the tailoring analysis.

Taken together, the Ordinance's provisions address distinct harms without creating overlapping physical exclusion zones or otherwise burdening more speech than necessary. Under *Hill*, *Ward*, and related precedent, the Ordinance remains narrowly tailored.

### C. Claimed Dissimilarities from Hill Are Constitutionally Insignificant

Appellant argues that factual differences between the Ordinance and the Colorado statute in *Hill* render that precedent inapplicable. (AOB 34.) They do not. The Ordinance mirrors the Colorado law in all constitutionally significant respects:

26

it regulates conduct, not speech; it is content-neutral; and it imposes modest, narrowly tailored restrictions to serve substantial governmental interests.

**Legislative Record Differences Are Irrelevant to Narrow Tailoring**

Appellant argues the Ordinance lacks the legislative record and public safety evidence present in *Hill*. (AOB 35–37.) However, *Hill*'s narrow-tailoring analysis did not hinge on an extensive legislative record or proof of imminent harm at each location. Instead, it recognized the State's "substantial and legitimate interest in protecting [persons entering healthcare facilities] from unwanted encounters, confrontations, and even assaults by enacting an exceedingly modest restriction on the speakers' ability to approach." *Hill v. Colorado*, 530 U.S. 703, 729 (2000). The Ordinance serves similar interests and, like the statute in *Hill*, does not bar any method of speech or exclude speakers from any part of the sidewalk. *Id*. at 726.

The Ordinance is not reactionary. San Diego has maintained buffer zones at Covered Facilities for more than two decades. 3 ER 370. Other municipalities across the country have adopted similar or identical measures. Under *Hill*, the City was not required to wait for incidents at each location before updating its ordinance in line with established precedent.

Appellant's claim of improper motive also fails. *Hill* held that even if a statute responds to conduct by one side of a public debate, it remains content

27

neutral if it regulates conduct uniformly. 530 U.S. at 724. The Ordinance applies equally to all speakers, regardless of viewpoint or message, and its purpose and effect are to ensure unobstructed access to Covered Facilities while preserving ample opportunities for speech.

### The City Was Not Required to Use Escalating Measures Before Adopting the Ordinance

Appellant asserts that Colorado adopted its law only after years of escalating efforts, whereas San Diego acted without similar preliminary measures. (AOB 37–39.) This mischaracterizes the record. San Diego has maintained buffer zones at Covered Facilities for nearly 28 years. 3-ER-370. The current Ordinance is a measured update to an existing, long-standing law, designed to align with legal precedent while continuing to prevent obstruction, harassment, and intimidation at sensitive locations.

Nothing in *Hill* suggests that the constitutionality of Colorado's statute turned on the length or nature of the legislative process. The Supreme Court's analysis rested on content neutrality, narrow tailoring, and the substantial governmental interests served. 530 U.S. at 726. Like the Colorado law, San Diego's Ordinance regulates only unconsented close approaches, leaves all sidewalks open for speech, and protects access and safety without banning expression.

28

There is no constitutional requirement that a municipality engage in staged or escalating measures before adopting a reasonable time, place, and manner restriction. The *Hill*-style buffer zone strikes the appropriate balance by protecting the constitutional rights of speakers while preventing obstruction, harassment, and intimidation. Cases such as *Schenck v. Pro-Choice Network of W. N.Y.*, 519 U.S. 357 (1997), and *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753 (1994), are inapposite; those decisions involved considerably broader buffer zones than the modest buffer zone approach upheld in *Hill* and replicated here.

Municipalities may rely on lessons from other jurisdictions and act in light of established precedent. *Hill* itself approved buffer zones based on general public-safety principles. San Diego acted prudently in updating its ordinance to reflect that precedent, rather than engaging in duplicative or less effective measures.

**Site-Specific Conditions Do Not Defeat Facial Constitutionality**

Appellant contends that even though the Ordinance is functionally identical to the Colorado statute upheld in Hill—existing within 100 feet of a Covered Facility's main entrance or gate, establishing an eight-foot radius, and prohibiting unconsented approaches for protest, counseling, or education—it must still be

29

evaluated under "the actual conditions speakers encounter." (AOB 40–42.). This argument misreads both *Hill* and *Hoye*.

First, Hill does not mandate the micro-level, location-specific tailoring Appellant demands. As the Seventh Circuit explained in *Price v. City of Chicago*, "Hill's narrow-tailoring analysis was highly generalized; it did not rest on the specific facts of the case or an evaluation of Colorado's evidentiary showing." 915 F.3d at 1119. The Colorado statute applied statewide to clinics in urban, suburban, and rural areas, some undoubtedly adjacent to noisy streets, yet the Supreme Court upheld it without requiring site-by-site adjustments. The same reasoning applies here.

Second, Appellant's reliance on *Hoye* is misplaced. *Hoye* held that Oakland's ordinance, modeled on the Colorado statute, was facially constitutional because *Hill* controlled much of the analysis. 653 F.3d at 843. The "actual conditions" language Appellant quotes arose in the context of an as-applied selective-enforcement claim. In *Hoye*, the plaintiff presented evidence that the City enforced the ordinance against anti-abortion speakers but not pro-abortion escorts, effectively creating a viewpoint-based exception. *Id*. at 844–45, 855–59. That was the "actual condition" that mattered, discriminatory enforcement, not ambient noise levels.

30

Here, Appellant alleges no such selective enforcement. The Ordinance applies uniformly to all speakers, regardless of viewpoint, and its employee exemption is permissible under *McCullen*, 573 U.S. at 482–85. Appellant instead argues that noise near the downtown Planned Parenthood makes communication less effective. But as *Hill* recognized, eight feet is an "exceedingly modest" restriction that still permits normal conversation, even in noisy environments. 530 U.S. at 726–27, 729.

Moreover, this is a facial challenge. Any site-specific noise concerns outside one clinic do not satisfy that standard and, at most, might support an as-applied challenge. The Ordinance's uniform application across all Covered Facilities ensures clarity, enforceability, and consistency, attributes the Court in *Hill* found compatible with narrow tailoring.

**The Ordinance Leaves Open Ample Alternative Channels for Communication**

Appellant contends the Ordinance is substantially more restrictive than the Colorado statute in *Hill* because it (1) measures the 100-foot radius from an outer entry gate, (2) covers any location where a licensed health care worker regularly sees patients, (3) extends obstruction prohibitions to patient parking lots, and (4) includes additional noise limits. (AOB 43–44.) None of these distinctions is constitutionally significant.

First, measuring the 100-foot zone from an entry gate rather than a door does not meaningfully alter the analysis. Both the Colorado statute and the Ordinance regulate conduct at the choke point where visitors must pass to obtain medical care, precisely where sidewalk counselors are most likely to congregate and where conflicts are most likely to occur. *Hill*'s approval of a uniform statewide standard was not dependent on the precise type of entry structure involved.

Second, the Ordinance's application to any location where a licensed health care worker regularly sees patients or provides medical advice is a clarification, not a constitutional expansion. As *Hill* explained, "[t]he fact that the coverage of a statute is broader than the specific concern that led to its enactment is of no constitutional significance. What is important is that all persons entering or leaving health care facilities share the interests served by the statute." 530 U.S. at 730-31. The protected interest follows the patient, not the building. Patients seeking treatment at mobile clinics, temporary facilities, or other nontraditional locations are entitled to the same privacy and unobstructed access as those visiting permanent clinics.

Third, extending obstruction prohibitions to parking lots a facility owns, uses, or designates for patient use is consistent with *Hill*'s rationale. The governmental interest is in ensuring safe and unimpeded access from the point of

32

arrival to the facility. Regulating obstruction in a designated patient parking lot serves the same access and safety interests as regulating obstruction at the facility's door. *Hill* provides no basis for treating this distinction as constitutionally significant.

Finally, the Ordinance's noise provisions do not foreclose alternative communication channels. They prohibit only disturbing, offensive, or excessive noise and amplified sound above 55 decibels at ten feet, ensuring that speech does not interfere with facility operations or infringe on patient access and privacy. Such limits are reasonable time, place, and manner regulations. See *Ward*, 491 U.S. at 796. Demonstrators remain free to hold signs, distribute literature with consent, and converse at normal volume within sight and hearing of their intended audience.

Under *Hill,* the Ordinance is narrowly tailored. None of the purported dissimilarities identified by Appellant meaningfully alter the constitutional analysis.

## III.   The Ordinance Is Content Neutral

The Supreme Court in *Hill* upheld a nearly identical eight-foot buffer zone as content neutral and valid under intermediate scrutiny. *Hill* found that the statute regulated where speech could occur, not what could be said; that it was not adopted to because of disagreement with the message it conveys; and that it applied equally

33

to all speakers. 530 U.S. at 719–20. The Court also emphasized that it imposed no viewpoint-based limits, prohibited no subject matter, and functioned as a modest place restriction focused on protecting unwilling listeners. *Id*. at 723.

This case is no different. The Ordinance does not distinguish among topics, messages, or viewpoints. It applies to all speakers and regulates only specific categories of conduct, passing a leaflet, displaying a sign, or engaging in oral protest, education, or counseling, near Covered Facilities.

The Supreme Court and this Circuit have repeatedly treated such across-the-board regulations as content neutral. See *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 648–49 (1981); *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 645 (1994) (explaining that rules that make distinctions "based only upon the manner in which speakers transmit their messages to viewers, and not upon the messages they carry" are not presumed to violate the First Amendment); *Project Veritas v. Schmidt*, 125 F.4th at 943–44 (a law remains content neutral even if it references content to identify a class of speech, so long as it does not discriminate on viewpoint or bar an entire topic).

Appellant's claim that the Ordinance is content based is foreclosed by *Hill*. The law's application does not depend on the substance of the message; it applies regardless of viewpoint or political leaning. *Hill* also rejected the idea that a law

34

becomes content based merely because enforcement requires identifying whether conduct is protest, counseling, or casual conversation. 530 U.S. at 720–22. Such a cursory determination does not convert a neutral time, place, and manner rule into a content-based restriction.

### A. Employee Scope-of-Duties Exemption Is Not Speaker-Based Discrimination

The Ordinance's exemption for employees, agents, and volunteers acting within the scope of their duties mirrors the provision the Supreme Court upheld in *McCullen v. Coakley*. There, the Court found "nothing inherently suspect" about exempting facility staff when the exemption is limited to operational functions such as escorting patients, clearing sidewalks, or providing security, and does not authorize expressive conduct. 573 U.S. 464 at 483.

Section 52.1003(f) is narrowly drawn. It exempts law-enforcement officers and Covered Facility personnel only when acting within the scope of their duties. The scope-of-employment limitation ensures the exemption is confined to job-related tasks. Escorts remain subject to all harassment, obstruction, and noise restrictions, and the exemption does not allow advocacy of any viewpoint while barring the opposite.

Appellant alleges no facts showing escorts engage in advocacy within the buffer zone as part of their duties. If such conduct occurred, it might support an

35

as-applied selective-enforcement claim, as in *Hoye v. City of Oakland*, 653 F.3d 835, 849–52 (9th Cir. 2011). But *Hoye* also reaffirmed that ordinances patterned on *Hill* are facially valid. *Id*. at 843. The hypothetical possibility of improper enforcement does not render a statute facially content based.

On its face, the Ordinance is content neutral. As in *McCullen*, the exemption reflects only that escorts are permitted to perform their jobs.

### B. Alleged Legislative Motive Does Not Affect Content Neutrality

Appellant argues the Ordinance is content based because it was allegedly enacted in response to the viewpoint expressed by pro-life sidewalk counselors. (AOB 47-49.) That contention fails under settled law.

The Supreme Court has made clear that courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive." *United States v. O'Brien*, 391 U.S. 367, 383 (1968). Individual statements or political leanings of some legislators do not establish the purpose of the legislative body as a whole, and the controlling inquiry is the text of the law. On its face, the Ordinance regulates all speakers equally, without regard to viewpoint or subject matter.

*Hill v. Colorado* is directly on point. There, the Court upheld a statute enacted primarily in response to pro-life protests outside abortion clinics.

36

530 U.S. 703, 715, 724 (2000). The Court explained that a statute is not viewpoint based "simply because its enactment was motivated by the conduct of partisans on one side of a debate," so long as it regulates all speakers evenhandedly. *Id*. at 724. The same is true here.

Speculation about political animus or the sequence of events leading to enactment does not transform a facially neutral regulation into a content-based restriction. The controlling question under *Ward v. Rock Against Racism*, is whether the regulation is "justified without reference to the content of the regulated speech." 491 U.S. at 791 (emphasis in original). The Ordinance satisfies that test. It targets specific conduct, unconsented close approaches, obstruction, and excessive noise, regardless of the speaker's viewpoint.

## C. Noise Limitations Are Content Neutral

Appellant claims the Ordinance's prohibition on "offensive" or "annoying" noise renders it content based. (AOB 50–51.) However, a regulation is content neutral if it is "*justified* without reference to the content of the regulated speech." *Ward*, 491 U.S. at 791.

The Ordinance's noise limits are justified by the City's substantial interests in ensuring public safety, preserving unimpeded access to health care facilities, and protecting patient privacy. They apply to all speakers, regardless of viewpoint, and

are measured by objective, reasonable-person standards. They prohibit disturbing,
offensive, or excessive noise and amplified sound above 55 decibels at ten feet,
whether the source is political protest, music, or any other expressive or
non-expressive activity.

Listener reaction to speech is not the focus of the Ordinance's noise
limitations. As *McCullen* explains, the problems identified by the City and
addressed by the restriction arise "irrespective of any listener's reactions." 573
U.S. 464, 481 (2014). The harm targeted is the disruptive impact of loud,
disturbing noise on patients receiving care and on the operation of Covered
Facilities. The Ordinance uses a reasonable-person standard to address that harm.

The Supreme Court has long recognized that noise limitations are
particularly important around medical facilities. In *Madsen v. Women's Health
Center, Inc.*, the Court upheld targeted noise restrictions outside a clinic, noting
that "[t]he nature of a place, 'the pattern of its normal activities, dictate the kinds of
regulations … that are reasonable.'" 512 U.S. at 772 (quoting *Grayned v. City of
Rockford*, 408 U.S. at 116). The Court emphasized that "[h]ospitals, after all, are
not factories or mines or assembly plants. They are hospitals, where human
ailments are treated, where patients and relatives alike often are under emotional
strain and worry … and where the patient and his family … need a restful,

38

uncluttered, relaxing, and helpful atmosphere." 512 U.S. at 772–73 (quoting
*NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 783–84 n.12 (1979)). The Court held
that such restrictions "burden no more speech than necessary to ensure the health
and well-being of the patients" and that "[t]he First Amendment does not demand
that patients at a medical facility undertake Herculean efforts to escape the
cacophony of political protests." *Madsen*, 512 U.S. at 772-73.

The Ordinance here follows the same principle. Its noise provisions are
modest, targeted, and narrowly focused on preventing disruptions to care and
preserving patient privacy. They regulate manner, not message, and fall well
within the bounds of permissible time, place, and manner restrictions upheld in
*Madsen*, *Ward*, and *Grayned*.

## IV.    *Hill v. Colorado* Remains Binding

### A.    *Hill* Controls This Case

Appellant devotes substantial effort to arguing that *Hill* is no longer binding.
(AOB 51–56.) The argument is unpersuasive, however, because the Supreme Court
has never explicitly overruled *Hill*, and only that Court has the authority to do so.

Lower courts should follow the case which directly controls, as it is "[the
Supreme Court's] prerogative alone to overrule one of its precedents." *State Oil
Co. v. Khan*, 522 U.S. 3, 20 (1997); *Agostini v. Felton*, 521 U.S. 203, 237 (1997)

("If a precedent of this Court has direct application in a case … the Court of Appeals should follow the case [that] directly controls").

This case falls squarely within *Hill*'s holding. Like the statute in *Hill*, the Ordinance regulates unconsented close approaches within eight feet near health care facilities, applies to all speakers regardless of viewpoint, and is aimed at preventing obstruction, harassment, and intimidation while preserving ample alternative channels for communication.

Courts have repeatedly recognized that *Hill* remains binding despite subsequent decisions such as *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), and *McCullen v. Coakley*, 573 U.S. 464 (2014). See *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 140 (2d Cir.), cert. denied, 144 S. Ct. 486 (2023) (upholding buffer zone "modeled after" the Colorado law in *Hill*); *Price v. City of Chicago*, 915 F.3d 1107, 1119 (7th Cir. 2019) ("*Hill* directly controls, notwithstanding its inconsistency with *McCullen* and *Reed*"); *Coal. Life v. City of Carbondale*, No. 23-2367, 2024 WL 1008591, at *1 (7th Cir. Mar. 8, 2024), cert. denied, 145 S. Ct. 537 (2025) ("We remain bound by *Hill* because the Supreme Court—though it has questioned the case's viability—has not expressly overruled it").

40

In short, *Hill* is binding. The Ordinance is materially indistinguishable from the law *Hill* upheld, and this Court is obligated to follow it. Any argument that *Hill* should be reconsidered must be addressed to the Supreme Court—not to this Court.

## B.    The Buffer Zone is Facially Content Neutral

Appellant argues the Ordinance is facially content based because it restricts "oral protest, education, or counseling," allegedly requiring the City to evaluate the speaker's message. (AOB 57–58.) That argument fails under *Hill*, which upheld a nearly identical law.

*Hill* makes clear that a law is not content based simply because it applies to categories of expressive conduct. *Id*. at 720–22. The statute in Hill, like the Ordinance here, applied to all speakers and all viewpoints. It did not require the government to assess the subject matter of speech. *Id*. at 720-22. The same is true of the Ordinance, which applies equally to all leafleting, signage, and oral protest, education, and counseling near Covered Facilities, regardless of what is said.

Appellant also misreads *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). There, the Court struck down a sign code that imposed different rules based on the sign's subject—ideological, political, or directional. *Id*. at 159–64. The restrictions in *Reed* depended entirely on communicative content. *Id*. at 164. The Ordinance

41

here does not. It regulates categories of conduct—leafleting, protesting, counseling—regardless of topic or viewpoint.

*Hill* also rejected the argument that enforcement becomes content based simply because officials "must sometimes" consider the speech to determine whether the rule applies. 530 U.S. at 720. The Court found no constitutional problem with that kind of threshold inquiry. *Id*. at 721. A quick assessment to distinguish expressive conduct from casual conversation does not make a law content based.

This understanding remains good law. In *Project Veritas v. Schmidt*, the Ninth Circuit applied *Hill* and upheld an Oregon law banning secret recordings. The plaintiff claimed the law was content based because some exceptions required looking at the recording's content. The court disagreed. It explained that the law drew lines based on context, not message, and emphasized that "[t]he principal inquiry . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."125 F.4th at 947 (quoting *Hill*, 530 U.S. at 719).

The Ninth Circuit concluded that the exceptions "app[ly] evenhandedly … regardless of the subject matter of the conversation." *Id*. at 952. The law regulated circumstances, not viewpoints. Id. That reasoning confirms *Hill* remains binding

42

and that neutral enforcement, even if it involves a brief content check, does not render a law content based.

### C.  The Ordinance Serves Compelling Interests

Appellant argues the Ordinance does not advance any government interest. (AOB 58–62). That is incorrect. The Ordinance advances several well-established and important public purposes.

As the San Diego City Council explained, the Ordinance was adopted to protect the privacy, safety, and access rights of students, teachers, patients, healthcare providers, worshippers, and others entering Covered Facilities. 3-ER-370-372.  The Municipal Code further states that the Ordinance seeks to balance the rights of individuals seeking healthcare, education, or religious services with the free speech rights of protestors. SDMC § 52.1001. Protecting access and preventing harassment are legitimate and historically recognized government interests.

The Supreme Court has repeatedly affirmed the City's interest in this arena. In *Hill*, the Court upheld a nearly identical statute and expressly held that "unimpeded access to health care facilities" and "the avoidance of potential trauma to patients associated with confrontational protests" are valid governmental interests. 530 U.S. 703, 715 (2000). Likewise, *McCullen v. Coakley* reaffirmed that

the government has a legitimate interest in ensuring public safety, promoting the free flow of traffic, protecting property rights, and protecting women's ability to seek healthcare services. 573 U.S. 464, 486–87.

San Diego has used buffer zones since 1997 to protect privacy and ensure safe access at sensitive facilities. The City updated the Ordinance to align with *Hill* and other long-established, constitutional buffer zone laws nationwide. Courts have consistently upheld such laws as valid exercises of municipal authority. It was reasonable for the City to rely on that legal framework, as well as its own history and experiences (3-ER-370–372), in determining that the Ordinance would advance its interests.

### D.    The Ordinance is Narrowly Tailored

A content-neutral time, place, or manner regulation must not "burden substantially more speech than is necessary to further the government's legitimate interests." *McCullen*, 573 U.S. at 486 (quoting *Ward*, 491 U.S. at 799). But the government "need not choose the least restrictive or least intrusive means" to satisfy this standard. *Hill*, 530 U.S. at 726; *McCullen*, 573 U.S. at 486.

Appellant argues that *Hill* no longer controls, but *Hill* has not been overruled and remains binding precedent. The Ordinance is nearly identical to the Colorado statute upheld in *Hill*. Both laws prohibit knowing and willful approaches within

eight feet of another person, within 100 feet of a healthcare facility, without that person's consent. Both leave open ample channels for speech. And both are grounded in the same governmental interest in protecting access and safety near sensitive facilities. *Hill*, 530 U.S. at 707–09, 726–27.

The tailoring requirement does not demand the least restrictive means. *Hill* rejected that standard. The Court explained that when a regulation "does not entirely foreclose any means of communication, it may satisfy the tailoring requirement even though it is not the least restrictive or least intrusive means of serving the statutory goal." *Id*. at 726. The Ordinance does not prohibit protest, signs, distribution of literature, or oral advocacy. It restricts only one narrow form of conduct: intentional, unconsented approaches within eight feet of a person near covered facilities.

Appellant's suggestion that other state or local laws could accomplish the same purpose is immaterial under *Hill*. In *Hill*, the Court upheld the statute even though harassment, obstruction, and trespass were already criminalized. The Court deferred to the legislature's judgment that more targeted protections were warranted given the unique concerns surrounding healthcare facilities. *Id*. at 729–30. The same reasoning applies here.

The Ordinance also preserves normal means of communication. *Hill* noted that an eight-foot buffer "should not have any adverse impact" on a speaker's ability to display signs, and may even improve visibility. *Id*. at 726. Speakers remain free to stand in place, speak, gesture, distribute literature, or hold signs—either inside or outside the 100-foot radius—so long as they do not knowingly approach someone within eight feet without consent.

The rule also protects speech by requiring a knowing and willful violation. *Id*. at 727. A mistaken or incidental encroachment is not punishable. The Ordinance mirrors the balance upheld in *Hill*: modest protection for privacy and safety, minimal burden on expressive conduct.

The question of narrow tailoring has already been answered. The Ordinance is modeled on the statute upheld in *Hill* and other courts of appeal throughout the country, and it is narrowly tailored for the same reasons. It directly addresses the government's interest without burdening more speech than necessary.

## V.    Preliminary Injunction Is Unwarranted

Appellant's claimed likelihood of success depends on overturning decades-old Supreme Court precedent that continues to guide courts evaluating similar laws. The Supreme Court and multiple courts of appeal have upheld regulations nearly identical to the Ordinance and a preliminary injunction is unwarranted.

46

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's dismissal order.

Respectfully submitted,

Dated:  August 13, 2025  HEATHER FERBERT, City Attorney

By  */s/Matthew L. Zollman*
Matthew L. Zollman
Deputy City Attorney

Attorneys for Appellee CITY OF SAN DIEGO

47

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** _____

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[X] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**      */s/Matthew L. Zollman*      Date: 8/13/2025

48

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains 8097 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[**X**] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**       */s/Matthew L. Zollman*    Date: 8/13/2025

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, I electronically filed the foregoing Appellee's Answering Brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system, which will accomplish service on counsel for all parties through the Court's electronic filing system.

HEATHER FERBERT, City Attorney

By  */s/Matthew L. Zollman*
      Matthew L. Zollman
      Deputy City Attorney

Attorneys for Appellee CITY OF
SAN DIEGO

50